UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Johnnie Robert Capers,** | **Civil No. 13-1041 (PJS/JJG)** |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **Ramsey County Public Defender and Officer Christopher Seehuetter,** | |
| **Defendants.** | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the undersigned United States Magistrate Judge on Defendant Ramsey County Public Defender's Motion to Dismiss (ECF No. 13). The Honorable Patrick J. Schiltz, United States District Judge, referred the motion to this Court in an Order of Reference dated September 24, 2013. (Order at 1, ECF No. 12.) As set forth below, the Court respectfully recommends that the Ramsey County Public Defender's motion be granted. The Court further recommends that all claims against Officer Christopher Seehuetter be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**I.     Factual and Procedural Background**

Plaintiff Johnnie Robert Capers ("Capers") initiated this action on May 2, 2013. On June 4, 2013, Capers filed an Amended Complaint naming as Defendants Ramsey County Public Defender ("RCPD"), Assistant Public Defender Richard Sarette ("Sarette"), St. Paul Police Officer Christopher Seehuetter ("Officer Seehuetter"), and the City of St. Paul Police Department ("SPPD"). (Am. Compl. at 1, ECF No. 4.) The Amended Complaint details two sets

of facts, one concerning a traffic stop and seizure of Capers' vehicle and the other concerning the effectiveness of Sarette's representation of Capers at trial.

Capers alleges the following facts with respect to the traffic stop and seizure of his vehicle. On August 25, 2008, Officer Seehuetter pulled over Capers' vehicle in a traffic stop. (Am. Compl. at 8.) Officer Seehuetter detained Capers in his squad car while he searched Capers' vehicle. (*Id.*) No drugs or other contraband were found, and Capers was ticketed and released. (*Id.*) As Capers was leaving the scene, Officer Seehuetter discovered drugs in the squad car where Capers had been sitting, and he arrested Capers for possession of controlled substances. (*Id.*) Capers' car was towed and impounded. (*Id.* at 9.) Based on these events, Capers brings claims pursuant to the Fourth Amendment and 42 U.S.C. § 1983 against Officer Seehuetter. (*Id.*)

The following alleged facts pertain to Sarette's subsequent representation of Capers. After Capers was charged with fifth-degree controlled substance possession, Sarette was appointed to represent him. (*Id.* at 4.) Capers asked Sarette to file a motion to suppress the drugs seized from the squad car, and although Sarette said he would, he did not file the motion. (*Id.*) Capers informed the trial judge of Sarette's failure and asked to postpone the trial, but the request was denied. (*Id.* at 5.) Capers was ultimately convicted, sentenced to twenty-four months of incarceration, and imprisoned. (*Id.*)

Capers then filed a post-conviction motion arguing that Sarette had provided ineffective representation. (*Id.* at 6.) The trial court agreed with Capers and vacated the conviction and sentence. (*Id.*) By that time, Capers had served nineteen months of his sentence. Capers contends that Sarette violated his Sixth Amendment right to effective assistance of counsel and his Fourteenth Amendment rights to due process and equal protection. (*Id.* at 6-7.) Capers further

contends that, as Sarette's employer, the RCPD had to have known of his incompetence. (*Id.* at 7.) Capers accuses the RCPD of continuing to employ Sarette even after it knew of his ineffective representation and of breaching its independent duty to insure that Sarette provided effective representation. (*Id.* at 8.) Although the Amended Complaint does not identify the legal bases for Capers' claims against the RCPD, the Court construes the pleading liberally to assert claims pursuant to § 1983, the Sixth Amendment, and the Fourteenth Amendment.

In an Order dated July 12, 2013, the District Court determined that the Amended Complaint did not state actionable claims against Sarette or the SPPD and dismissed all claims against those Defendants. (Order at 1, ECF No. 5.) The District Court also found, on the other hand, that the new allegations against the RCPD and Officer Seehuetter could potentially withstand initial screening. (*Id.* at 2.) This Court subsequently issued a summary order approving Capers' application to proceed without prepayment of fees. (Order at 1, Aug. 15, 2013, ECF No. 6).

On September 30, 2013, the RCPD filed a motion to dismiss, requesting dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and, alternatively, for failure to state a claim under Rule 12(b)(6). The motion was referred to this Court for the issuance of a report and recommendation. (Order at 1, Sept. 25, 2013, ECF No. 12.)

## II. Subject Matter Jurisdiction

The RCPD argues that all claims against it must be dismissed for lack of subject matter jurisdiction because the Eleventh Amendment immunizes the RCPD against suits for monetary damages. It is not clear from the Amended Complaint whether Capers is suing the RCPD as an individual or an entity. The distinction is not significant, however, because a suit against a public employee in his or her official capacity is a suit against the public entity itself. *Johnson v.*

*Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). To the extent Capers meant to sue the RCPD as an individual, the Amended Complaint does not specify whether he is pursuing claims against the RCPD in his or her official or individual capacity. In this circumstance, the Court presumes that the RCPD is sued only in his or her official capacity. *See Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995) ("If a plaintiff's complaint is silent about the capacity in which she is suing the defendant, we interpret the complaint as including only official-capacity claims."). Thus, the Court views Capers' claims as brought against the RCPD as an entity.

The Eleventh Amendment provides that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend XI. Although the Eleventh Amendment refers to suits against a state by a citizen of another state, the United States Supreme Court has long applied the jurisdictional bar to suits against a state brought by a citizen of the same state. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72-73 (2000). In either event, the Eleventh Amendment shields a state from liability in an action for monetary damages brought by an individual in federal court, unless the state has explicitly consented to suit or Congress has rescinded immunity for a particular federal claim. *See Hadley v. N. Ark. Cmty. Tech. Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996). A suit barred by the Eleventh Amendment must be dismissed for lack of subject matter jurisdiction. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 64-65 (1996).

In assessing whether the RCPD is entitled to Eleventh Amendment immunity, the Court must first determine whether the RCPD is an arm of the state. *See Sherman v. Curators of Univ. of Mo.*, 16 F.3d 860, 863 (8th Cir. 1994) (quotation omitted). Relevant considerations include the

provisions of state law defining the nature of the RCPD, specifically the RCPD's "degree of autonomy and control over its own affairs," and whether any judgment would be paid from the state treasury. *Thomas v. St. Louis Bd. of Police Comm'rs*, 447 F.3d 1082, 1084 (8th Cir. 2006) (quotation and citations omitted).

The Minnesota State Board of Public Defense ("Board") was created in 1981 "to oversee the public defense system and to distribute any funds appropriated by the state for public defense services." *Kennedy v. Carlson*, 544 N.W.2d 1, 3 (Minn. 1996). The Board and the State Public Defender are tasked with oversight of all district public defenders and with establishing standards for offices, caseloads, qualifications, training, eligibility for appointment, conduct, and contracts. Minn. Stat. § 611.215, subd. 2. The Board thus possesses a significant degree of authority and control over the RCPD's affairs. In addition, Minn. Stat. § 611.263, subd. 3, provides that "district public defenders and employees in the Second and Fourth Judicial Districts who are hired on or after January 1, 1999, are state employees of the Board of Public Defense and are governed by the personnel rules adopted by the Board of Public Defense."[1] In accordance with this statute, any employee of the RCPD hired within the last fifteen years is an employee of the State of Minnesota and is governed by state personnel rules, further suggesting that the RCPD is an arm of the state.

Financial and budgetary considerations also suggest the RCPD is an arm of the state, rather than a county entity. The RCPD is funded by the Board, not through county property taxes. Minn. Stat. § 611.26, subd. 3a(b). The Minnesota Supreme Court recognized in *Kennedy* that the budgets of public defenders rely almost exclusively on state funding. 544 N.W.2d at 3.

---

[1] The Court takes judicial notice that Ramsey County is in the Second Judicial District.

Under Minnesota's statutory framework, any judgment against the RCPD would be paid by the state.

Based on the relevant considerations, the Court finds that the RCPD is an arm of the state. Courts considering offices of public defenders in other states are in accord. *See, e.g.*, *Jackson v. Brummett*, 311 F. App'x 114, 115 (10th Cir. 2009); *Browdy v. Karpe*, 131 F. App'x 751, 752-53 (2d Cir. 2005); *Smith v. LaFollette*, 92-C-0654-C, 1994 WL 142877, at *2, 7 (7th Cir. Apr. 20, 1994); *Holmes v. Attorney Gen. of Del.*, Civ. No. 13-1101-RGA, 2013 WL 5435811, at *2 (D. Del. Sept. 30, 2013).

The Court next considers whether Minnesota has expressly waived its Eleventh Amendment immunity or consented to be sued for the claims alleged by Capers. "To waive sovereign immunity, a state must make a clear, unequivocal statement that it wishes to do so." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 800 (8th Cir. 2002) (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238-40 (1985)). The RCPD asserts that the state has not waived immunity or consented to be sued, and Capers has not shown otherwise. Indeed, it is widely recognized that "Minnesota has *not* waived its Eleventh Amendment immunity from suit in federal court for federal constitutional claims." *Eaton v. Minn. Attorney Gen.'s Office*, Civ. No. 10-1804 (JRT/FLN), 2011 WL 1195777, at *3 (D. Minn. Mar. 28, 2011) (citing *DeGidio v. Perpich*, 612 F. Supp. 1383, 1388-89 (D. Minn. 1985)); *see Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 969 (8th Cir. 2000).

Congress has not abrogated Eleventh Amendment immunity for § 1983 claims, *Quern v. Jordan*, 440 U.S. 332, 342, 345 (1979), nor has Congress enacted legislation abrogating immunity for Capers' Sixth Amendment or Fourteenth Amendment claims, assuming that Capers intended to assert those claims directly. Any congressional intention to abrogate a state's

sovereign immunity must be set forth unmistakably and clearly in statutory language. *Kimel*, 528 U.S. at 73 (quoting *Dellmuth v. Muth*, 491 U.S. 223, 228 (1989)). Capers has not identified any such statutory language for the claims he has alleged against the RCPD. At the hearing on the RCPD's motion to dismiss, Capers argued that Congress abrogated Eleventh Amendment immunity for Title VII claims. While this is accurate, *see Warren v. Prejean*, 301 F.3d 893, 899 (8th Cir. 2002), Capers has not alleged a Title VII claim against the RCPD.

In light of all of the above, the Court concludes that it lacks subject matter jurisdiction over Capers' claims against the RCPD. The claims should be dismissed accordingly.

## III.    Defendant Christopher Seehuetter

If all claims against the RCPD are dismissed, only Officer Seehuetter will remain as a defendant in this case. Officer Seehuetter is deceased. (*See* Process Receipt and Return at 1, Aug. 30, 2013, ECF No. 9.) He passed away before he was ever served with a copy of the summons and complaint. (*Id.*) No party has addressed the effect of Officer Seehuetter's death on Capers' failure to effect service or on the viability of his claims. The Court raises the issue sua sponte and recommends that all claims against Officer Seehuetter be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which allows a court to dismiss an action at any time upon determining that the plaintiff has not stated a plausible claim for relief.

Capers sued Officer Seehuetter in his official capacity only. This means Capers' claims are deemed as having been brought against Officer Seehuetter's employer, the City of St. Paul ("City"). *See Lopez-Buric v. Notch*, 168 F. Supp. 2d 1046, 1049 (D. Minn. 2001), *as amended by* Civ. No. 00-0928 (ADM/RLE), 2001 WL 1488112 (D. Minn. Apr. 25, 2001); *see also Graham*, 473 U.S. at 165 (stating that official capacity suits "'generally represent only another way of

pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690, n.55 (1978)).

Given the death of Officer Seehuetter and the procedural posture of the claims against him, it would serve little purpose to require Capers to file a motion for substitution of parties or to serve a copy of the Amended Complaint on the City or Officer Seehuetter's representative. Accordingly, the Court will assess Capers' allegations against Officer Seehuetter at this time, and Capers may make his arguments against dismissal through the objections process.

As mentioned, the Court treats Capers' § 1983 and Fourth Amendment claims against Officer Seehuetter in his official capacity as claims against the City. *See Graham*, 473 U.S. at 165. To state a plausible claim against a municipal entity, a plaintiff must, at a minimum, plead facts "suggesting the existence of an unconstitutional practice or custom." *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). Neither the original complaint nor the Amended Complaint contain any such allegations, however. There are simply no facts, language, or other allegations supporting even an inference that Officer Seehuetter's actions resulted from a City policy or custom of illegal searches and seizures. *See id.* Thus, Capers' claim against Officer Seehuetter should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV. Recommendation

The lone Defendants remaining in this case are the RCPD and Officer Seehuetter. The Court lacks subject matter jurisdiction over Capers' claims against the RCPD, and Capers has not stated a plausible claim for relief against Officer Seehuetter. While the Court is not unsympathetic to Capers' position, he simply has no actionable federal claim for relief.

Accordingly, **IT IS HEREBY RECOMMENDED** that:

1. The Ramsey County Public Defender's Motion to Dismiss (ECF No. 13) be **GRANTED**;

2. All claims against the Ramsey County Public Defender be **DISMISSED WITH PREJUDICE**;

3. All claims against Officer Christopher Seehuetter be **DISMISSED WITH PREJUDICE**; and

4 This case be **CLOSED** and **JUDGMENT ENTERED ACCORDINGLY**.

Dated: January 15, 2014

*s/Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge

### NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **February 5, 2014**. A party may respond to the objections within fourteen days after service thereof. Any objections or responses shall not exceed 3,500 words. The District Judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the District Judge is not required to review a transcript or the District Judge directs otherwise.